IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| RASHARD RENFRO | § | |
| VS. | § | CIVIL ACTION NO. 1:21-cv-49 |
| BOBBY LUMPKIN, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rashard Renfro, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Bobby Lumpkin, the director of TDCJ-CID, Officer Onyemuche Ogu, Lieutenant Jonathan Joseph and Officer James Cooper. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants Lumpkin, Ogu and Joseph have filed a joint Amended Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. #53.)

Factual Allegations

In his Complaint (doc. #1), Plaintiff alleges that on March 13, 2000, he was on his way to a religious service accompanied by three other inmates. Defendant Cooper denied them passage and began cursing and making offensive remarks to the inmates. Plaintiff states he asked that a supervisor be called.

Defendant Ogu came to the aid of the inmates and attempted to pull Plaintiff aside. Plaintiff states Defendant Cooper reacted badly to this action and continued yelling offense slurs. Plaintiff states that while the slurs would have caused a reasonable person to become excited, he remained calm.

Defendant Cooper then began to berate inmate Colton Barrett. He knocked Plaintiff's prayer rug and religious text from his hands while Defendant Ogu watched without intervening. Plaintiff

asserts that when he asked Defendant Ogu if he has seen what Defendant Cooper did, Defendant Ogu stated that he did not see anything.

Plaintiff states Defendant Ogu directed him away from Defendant Cooper. Then, "out of the blue," Defendant Cooper hit Plaintiff from behind, across the right side of his jaw. This resulted in excruciating pain. Defendant Cooper then jumped on Plaintiff's back, bringing him to his knees. Plaintiff, who says he is known to suffer from hemophilia, states this action caused lacerations to his kneecaps, which resulted in profuse bleeding. Plaintiff asserts Defendant Ogu observed these actions, but failed to intervene on his behalf.

Plaintiff states that as he laid on the floor, he thought he would die due to blood loss. He alleges Defendant Cooper placed his knee on his back. After Plaintiff was placed in handcuffs, Defendant Joseph arrived at the scene.

Defendant Ogu told Defendant Joseph that while Plaintiff was talking to him, Defendant Cooper came up behind Plaintiff, struck him and forced him to the ground. Plaintiff states Defendant Ogu did not express any disapproval of Defendant Cooper's actions.

Plaintiff alleges Defendant Joseph instructed him to go and sit in a holding cell. He states he remained there for three hours, bleeding and in pain, until Defendant Joseph came and took him to the infirmary. In the infirmary, medical personnel determined Plaintiff had traumatic injuries and needed to be transported to an emergency room outside the prison. Plaintiff states that after he was refused treatment at the emergency room, he was taken to the hospital operated by the University of Texas, Medical Branch, in Galveston.

Plaintiff was diagnosed as having a mandible fracture to his jaw. He was taken to surgery to have his jaw wired shut and was placed on a completely liquid diet.

The Motion to Dismiss

Initially, Defendant Lumpkin asserts that to extent he is sued in his official capacity for money damages, he is entitled to immunity under the Eleventh Amendment. Defendant Lumpkin

also states Plaintiff failed to show he was personally involved in the events described in the Complaint. Finally, Defendants assert they are entitled to qualified immunity.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), the district court has the authority to dismiss an action for lack of subject matter jurisdiction based on: (1) the complaint alone, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court generally can decide disputed issues of material fact in order to determine whether or not it has jurisdiction. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (3rd Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if it fails to state a claim upon which relief may be granted. A complaint does not need detailed factual allegations, but a plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. A plaintiff must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

### *Eleventh Amendment Immunity*

"The Eleventh Amendment prohibits a private citizen from bring suit against a state in federal court unless the state consents." *Daigle v. Gulf States Utils. Co., Loc. Union No. 2286*, 794 F.2d 974, 980 (5th Cir. 1986). Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Federal claims against state officials in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).

Based on the authorities cited above, Defendant Lumpkin is entitled to immunity under the Eleventh Amendment for claims for money damages against him in his official capacity. This court therefore lacks subject-matter jurisdiction over any official capacity claim for money damages.[1]

*Claim Against Defendant Lumpkin in his Individual Capacity*

To successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Plaintiff does not allege Defendant Lumpkin was personally involved in the actions described in the complaint.

Plaintiff does assert Defendant Lumpkin chose to initiate a policy, custom or practice that deprived him of his right to be free from being assaulted and condoned the assault by Defendant Cooper. As a result, Plaintiff may be attempting to assert a claim against Defendant Lumpkin based on the actions of his subordinates. However, under Section 1983 supervisory officials are not liable for the acts of their subordinates under any theory of vicarious liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). A supervisor may be held liable only for implementing a policy that repudiates constitutional rights and which is the moving force behind the harm suffered by the plaintiff. *Id.*

Plaintiff states in conclusory fashion that Defendant Lumpkin initiated a policy, custom or practice that resulted in him being assaulted. However, Plaintiff has not identified the policy, custom or practice, stated when it was initiated, or stated any facts demonstrating Defendant Lumpkin was the person who initiated it. As Plaintiff has failed to assert Defendant Lumpkin was personally involved in the actions described in his Complaint or stated facts in support of his assertion that Defendant Lumplin initiated a deficient policy, practice or custom, he has failed to state a claim against Defendant Lumpkin upon which relief may be granted.

---

[1] It is not clear whether Defendants Ogu and Joseph are being sued in their official as well as their individual capacities. To the extent they are being sued in their official capacities, they are also entitled to immunity under the Eleventh Amendment for claims for money damages.

*Qualified Immunity*

The doctrine of qualified immunity affords protection to officials against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Evaluating qualified immunity is a two-step process, with the plaintiff bearing the burden of showing that the defendant is not entitled to immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). First, the court must determine whether a plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. 736. Then, if a constitutional right was violated, the court must determine whether the right was clearly established at the time of the violation. *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). A specific right is clearly established only if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the defense is not valid. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*). In the context of a motion to dismiss for failure to state a claim, the plaintiff's burden is discharged if "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

*Failure to Protect*

Plaintiff alleges Defendants Ogu and Joseph failed to protect him from being assaulted by Defendant Cooper. A correctional official may be liable under Section 1983 if he was present when another officer used excessive force and failed to take reasonable measures to protect the prisoner. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To prevail on a bystander liability claim, the plaintiff must show the defendant: (1) knew that another officer was violating the plaintiff's constitutional rights; (2) had a reasonable opportunity to prevent harm to the plaintiff and (3) chose not to act. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017). When a defendant is sued under

a theory of bystander liability, the focus of the inquiry is on whether the defendant had a reasonable opportunity to realize the excessive nature of the use of force and intervene to stop it. *Hale*, 45 F.3d at 919.

Plaintiff's allegations show that Defendant Joseph did not arrive at the scene until after the use of force concluded. As a result, Defendant Joseph may not be held liable under a theory of bystander liability. *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) (bystander liability will not attach where a defendant is not present at the scene of the constitutional violation).

The claim against Defendant Ogu presents a closer question. Defendant Ogu was present during the use of force. However, Plaintiff describes the initial blow struck by Defendant Cooper as "coming out of the blue," indicating Defendant Ogu would not have had a chance to anticipate and prevent the blow. The use of force continued after the initial blow, as Plaintiff alleges Defendant Cooper also jumped on Plaintiff's back, bringing him to his knees. Plaintiff also alleges he remained on the floor with Defendant Cooper's knee on his back.

Plaintiff's allegations regarding the use of force can be separated into three segments: (1) the initial blow; (2) Plaintiff being taken to his knees and then to the floor and (3) Defendant Cooper placing his knee on Plaintiff's back. While the use of force can be separated into three segments, Plaintiff's allegations show the second segment immediately followed the first segment, while the third segment immediately followed the second one. To a bystander such as Defendant Ogu, however, who would not have had cause to anticipate the actions taken by Defendant Cooper, the use of force would not have appeared to have been divided neatly into segments. Instead, each aspect of the use of force would have appeared as part of a continuous event, beginning with Defendant Cooper striking Plaintiff from behind and ending with Defendant Cooper's knee in Plaintiff's back. As Plaintiff's allegations indicate Ogu would not have anticipated Defendant Cooper would use force, it cannot be concluded the allegations demonstrate Defendant Ogu had a reasonable opportunity to react to the use of force and intervene to try and stop Defendant Cooper.

For the reasons set forth above, Plaintiff's allegations concerning the failure to protect him from being assaulted by Defendant Cooper fail to demonstrate a constitutional violation. Defendants Ogu and Joseph are therefore entitled to qualified immunity with respect to this claim.

*Deliberate Indifference to Serious Medical Needs*

To establish a violation of the Eighth Amendment to the Constitution based on the denial of medical care, a prisoner must allege a defendant was deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A defendant is deliberately indifferent to serious medical needs only if he knows an inmate faces a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Negligence or neglect does not rise to the level of a constitutional violation. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). In addition, disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001), the Fifth Circuit described the deliberate indifference standard as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a clam for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs.

A delay in receiving medical treatment can constitute a constitutional violation, but only if there is deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Pain suffered during a delay in receiving medical care due to deliberate indifference can constitute substantial harm. *Anderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017).

Plaintiff states he was on the floor of a holding cell for three hours while bleeding and in pain before being taken to the infirmary. While Plaintiff does not allege his injuries became worse as a result of this delay or that the delay changed the treatment he ultimately received, he does assert he

was in pain during this period of time. While it is not clear Defendant Joseph knew how much pain Plaintiff was in, the fact that both kneecaps were bleeding would likely have been evident. Based on this, it would have been reasonable to expect Defendant Joseph to check on Plaintiff sooner. Even if it is assumed, however, that Defendant Joseph should not have waited three hours to check on Plaintiff and take him to the infirmary, the allegations fail to show Defendant Joseph was aware Plaintiff was subject to a substantial risk of serious harm if not treated within three hours. Finally, while Plaintiff states he was known to suffer from hemophilia, he does not state Defendant Joseph knew this. Defendant Joseph may have been negligent in not taking Plaintiff to the infirmary sooner. The allegations against him, however, do not show he acted with deliberate indifference.

As the allegations are insufficient to indicate Defendant Joseph acted with deliberate indifference, the allegations do not establish a constitutional violation. Defendant Joseph is therefore entitled to qualified immunity.

## Recommendation

The Amended Motion to Dismiss should be granted.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

**SIGNED this the 17th day of January, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE